AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
### District of Utah

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>the domain names<br>darksidedefense.com/www.darksidedefense.com | )<br>)<br>)<br>)<br>)    Case No. 2:17mj90-DBP |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____Eastern_____ District of _____Virginia_____ is subject to forfeiture to the United States of America under ___26___ U.S.C. § ____7302____ *(describe the property)*:

the domain names darksidedefense.com/www.darksidedefense.com which is seizable and forfeitable purusant to Title 26 United States Code, Section 7302 . The domain names registry, Network Solutions, LLC., which is located at Hernon, Virginia, shall be directed to comply with all terms of this warrant by placing on registry lock the domain name pursuant to the conditions set out in Attachment A hereto pending further Order of the Court.

The application is based on these facts:

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Clinton Kehr, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___02/13/2017___

_____
*Judge's signature*

City and state: __Salt Lake City, Utah__

Dustin B. Pead, United States Magistrate Judge
*Printed name and title*

AO 109 (Rev. 12/09)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

**IN THE MATTER OF THE SEIZURE OF:**

**the domain names darksidedefense.com / www.darksidedefense.com**

Case No. _____

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEIZURE WARRANT

I, Clinton Kehr, Special Agent with the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a seizure warrant for the domain names www.darksidedefense.com and darksidedefense.com, whose Registrant is Network Solutions, LLC, based in ~~Hernon,~~ *HERNDON* Virginia, and website hosting company is Wix.com, based in Tel Aviv, Israel. The domains to be seized are described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a seizure warrant under 26 U.S.C. § 7302 to require Network Solutions, LLC and Wix.com to restrain and lock the domain names www.darksidedefense.com and darksidedefense.com and turn them over to the United States.

2.      I am a Special Agent with the ATF at the United States Department of Justice, and have been so employed since April 2008. Prior to joining the ATF, I was a police officer in Scottsdale, Arizona, from December 2005 through April 2008.

3.     I am currently assigned to the ATF Salt Lake City Field Office and am a Task Force Officer with the FBI Cyber Task Force. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. As a result of my training and experience as an ATF agent, I am familiar with federal and state criminal laws. My primary duties have been the enforcement of federal firearms and explosives laws. In that capacity, I have directed and participated in numerous investigations involving possession and acquisition of firearms by both prohibited and non-prohibited persons. I have also directed and participated in the executions of numerous search warrants involving various violations of federal and state laws. I have also been the affiant on numerous federal search and arrest warrants for firearms and narcotics violations.

4.     I have received training in computer investigations from the Federal Law Enforcement Training Center - Internet Investigation Training Program and the Defense Cyber Investigations Training Academy, where I am certified as a digital media collection specialist. I also have a graduate certificate in digital forensics from EC-Council University. Additionally, I wrote the curriculum for and have taught internet investigation techniques at the ATF National Academy.

5.     As a result of this training, I know it is a violation of 26 U.S.C. § 5861(f) for any person to make a firearm in violation of the National Firearms Act ("NFA"). It is a violation of 26 U.S.C. § 5861(d) for a person to receive or possess a "firearm" that is not registered to him/her in the National Firearms Registration and Transfer Record ("NFRTR"). The definition of a "firearm" includes silencers/suppressors. It is a violation of 26 U.S.C. § 5861(e) for any person to transfer an NFA firearm (including a

silencer/suppressor) to another person that is not registered to him/her in the NFRTR. It is also a violation of 26 U.S.C. § 5861(j) for any person to knowingly transport, deliver, or receive any NFA firearm (including a silencer/suppressor) in interstate commerce to another person that is not registered to him/her in the NFRTR. It is a violation of 26 U.S.C. § 5861(a), for any person to engage in the business as a manufacturer or dealer in NFA firearms without paying the required federal tax or having registered with ATF.

6.     The statements contained in this affidavit are based on my investigation of this matter, my experience and training as a law enforcement officer, my review of reports pertaining to this investigation, and information provided to me by other ATF special agents. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.     Based on my training and experience and the facts as set forth in this affidavit, I respectfully assert probable cause exists to believe that violations of 26 U.S.C. §§ 5861(a), (d), (e), (f), and (j) have been committed by TYRE TYNDALL and other co-conspirators. Probable cause also exists to seize the domain names in Attachment A, fully incorporated herein.

8.     As discussed in more detail below, probable cause exists to believe that the www.darksidedefense.com and darksidedefense.com ("the Subject Domains") are property used, or intended to be used, to commit or facilitate the commission of the unlicensed manufacturing, sale, and trafficking in silencers, in violation of 26 U.S.C. §§

5861(a), (d), (e), (f), and (j). Therefore, the Subject Domains are subject to civil seizure pursuant to 26 U.S.C. § 7302.

## RELEVANT FIREARMS REGULATIONS

9.     Title 26 defines a silencer by referral to its definition in 18 U.S.C. § 921(a)(24). 18 U.S.C. § 921(a)(24) defines a silencer as "any device for silencing, muffling, or diminishing the report of a portable firearm, including *any combination of parts*, designed or redesigned, and intended for use *in assembling or fabricating* a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." (Emphasis added).

10.     In order to legally manufacture a firearm, a person must have a Federal firearms license ("FFL") issued by ATF. 27 C.F.R. § 479.103 reads:

> Each manufacturer qualified under this part shall file with the Director an accurate notice on Form 2 (Firearms), Notice of Firearms Manufactured or Imported, executed under the penalties of perjury, to show his manufacture of firearms. The notice shall set forth the name and address of the manufacturer, identify his special (occupational) tax stamp and Federal firearms license, and show the date of manufacture, the type, model, length of barrel, overall length, caliber, gauge or size, serial numbers, and other marks of identification of the firearms he manufactures, and the place where the manufactured firearms will be kept. All firearms manufactured by him during a single day shall be included on one notice, Form 2 (Firearms), filed by the manufacturer no later than the close of the next business day. The manufacturer shall prepare the notice, Form 2 (Firearms), in duplicate, file the original notice as prescribed herein and keep the copy with the records required by subpart I of this part at the premises covered by his special (occupational) tax stamp. Receipt of the notice, Form 2 (Firearms), by the Director shall effectuate the registration of the firearms listed on that notice. The requirements of this part relating to the transfer of a firearm are applicable to transfers by qualified manufacturers.

11.     Any NFA weapon, as defined under 26 U.S.C. § 5845, which includes silencers/suppressors, machine guns, short-barreled rifles/shotguns, "any other weapons," and destructive devices, must be registered with the NFRTR as required under 26 U.S.C. §§ 5812(a) and (b). Anyone who wishes to possess or transfer a registered NFA firearm must apply for the appropriate tax stamp and pay the related tax. ATF transfer paperwork (ATF Forms 3 or 4) must be filled out for each NFA transfer and each transfer must be approved by ATF *prior* to the transfer of the NFA weapon.

12.     I know through my training and experience that FFLs, including those who have a license to manufacture NFA weapons, are required to be familiar with these NFA rules and firearm regulations. Licensee(s) and manufacturer(s) are provided materials when licensed outlining their responsibilities and stating the applicable requirements. They are also given contact information, including the internet address of websites, that can assist in answering any questions they might still have. Thus, a licensed FFL knows that to take possession of or to transfer any NFA weapon, such as a silencer/suppressor, ATF approval must be obtained. The approval will not occur unless a written ATF Form 3 or ATF Form 4 is submitted to ATF. Per 27 C.F.R. § 478.123(a) and 18 U.S.C. § 922(m), these weapons must be logged into and out of the FFL's Acquisition/Disposition books ("gun books") by the FFL upon the manufacture as well as the transfer of the NFA weapon to another individual or entity.

## INTERNET DOMAIN NAMES

13.     Based on my training and experience, as well as conversations with other agents, I know the following:

a.     A domain name is a simple, easy-to-remember way for humans to identify computers on the Internet. For example, "www.usdoj.gov" and "www.yahoo.com" are domain names.

b.     The Domain Name System ("DNS") is, among other things, a hierarchical convention for domain names. Domain names are composed of one or more parts, or "labels," that are delimited by periods, such as "www.example.com." The hierarchy of domains descends from right to left; each label to the left specifies a subdivision, or subdomain, of the domain on the right. The right-most label conveys the "top-level" domain. For example, the domain name "www.example.com" means that the computer assigned that name is in the ".com" top-level domain and the "example" second-level domain, and is a web server (denoted by the "www").

c.     DNS servers are computers connected to the Internet that convert domain names that are easy for humans to remember into Internet Protocol ("IP") addresses, which are unique machine-readable numeric addresses that computers use to identify each other on the Internet. An IP address looks like a series of four numbers, each in the range of 0-255, separated by periods (e.g., 121.56.97.178). Every computer connection to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer is directed properly from its source to its destination. DNS servers can be said to "resolve" or "translate" domain names into IP addresses.

d.      For each top-level domain (such as ".com"), there is a single company, called a "registry," that determines which second-level domain resolves to which IP address. For example, the registry for the ".tv," ".net," and ".com" top-level domains is VeriSign, Inc., 487 East Middlefield Road, Mountain View, CA 94043. The registry for the ".org" top-level domain is The Public Interest Registry, 1775 Wiehle Avenue, Suite 200, Reston, VA 20190 and the ".org" top-level domain is administered by Afillas USA, Inc., Building 3, Suite 105, 300 Welsh Road, Horsham, PA 19044.

e.      If an individual or business wants to purchase a domain name, they buy it through a company called a "registrar." Network Solutions and GoDaddy are two well-known examples of registrars, although there are hundreds of registrars on the Internet. The registrar, in turn, communicates this purchase to the relevant registry. The individual or business who purchases, or registers, a domain name is called a "registrant."

f.      Registrants control the IP address, and thus the computer, to which the domain name resolves. Thus, a registrant may easily move a domain name to another computer anywhere in the world simply by changing the IP address at the registry.

g.      Registries and/or registrars maintain additional information about domain names, including the name and contact information of the registrant.

h.      Domain names must be registered to particular individuals. Sometimes, web hosting companies offer customers the separate service of registering domain names. When that occurs, web hosting companies typically retain information related to the domain name, including the date on which the domain was registered, the domain name itself, contact and billing information for the person or entity who

registered the domain, administrative and technical contacts for the domain, and the method of payment tendered to secure and register the domain name.

## STATEMENT OF PROBABLE CAUSE

14.    In June 2016, ATF SA Tyler Olson contacted me about a website called www.darksidedefense.com, which was advertising "solvent traps."

15.    On June 20, 2016, I navigated to the website and observed the "Darkside Defense" logo appeared to be in the same style as the logo for the movie *Star Wars*. The advertisement on the webpage stated, "First Solvent Trap with Integrated Flash Hider." I observed the price for a "Complete Assembly with Integrated Flash Hider" was $299.95.

16.    I took a screenshot of the webpage and sent a copy to an ATF Intelligence Program Specialist ("IPS"). The IPS showed the screenshot to in the chief of the ATF Firearms Technology Branch ("FTB"), who determined that based on the description of the item, and photographs of the item on the website, the item appeared to be a combination of parts from which a silencer can be assembled in violation of 26 U.S.C. § 5861(f).

17.    I used the ping command in the Linux terminal to communicate with the website www.darksidedefense.com and learned it resolved to IP address 52.205.78.109. I queried the IP address in the American Registry of Internet Numbers and discovered the owner of that IP address is Amazon Technologies Inc., based in Seattle, Washington.

18.    I then analyzed the hyper-text markup language ("HTML") of the webpage (the code used to make the webpage) and observed within the metadata the keywords, "Silencer, suppressor, AR compensator, chemical traps, solvent trap, and compensator."

8

19.     I observed on the webpage the phone number 435-512-XXXX and an email address of contact@darksidedefense.com.

20.     I queried the phone number through a law enforcement database and discovered the query resulted in a match for Tyre TYNDALL. I found a Facebook page for TYNDALL and observed the "cover photo" for TYNDALL was a picture of Star Wars in the same style as the "Darkside Defense" logo.

21.     On June 22, 2016, ATF SA Olson requested that an ATF undercover agent ("UC") use his undercover identification to purchase two devices from Darkside Defense for lab analysis and classification. The UC, in an undercover capacity, attempted to purchase two of the suspected silencers from Subject Domain name via the internet. The UC had issues with using the credit card PayPal method required by Darkside Defense. In an attempt to resolve the problem, the UC called the phone number listed on the Subject Domain name, 435-512-XXXX.

22.     On this same date, when the UC called 435-512-XXXX, a male subject who later identified himself as "Ty" answered and spoke with the UC. The UC advised Ty his credit card was not working with the Subject domain or PayPal making it impossible to place the order. The UC asked Ty if they could meet up locally. Ty stated he had already been in the Salt Lake City area earlier that very day and would not be back for a while. Ty told the UC if he could pay for it, he would ship it via USPS quickly. Ty told the UC he would look into the issue to make sure it was not a problem on the Subject domain side.

23.     Later that day, the UC called Ty at 435-512-XXXX. Ty explained to the UC there was nothing wrong with the Subject domain and there must be something wrong with the UC's credit card. This was also discussed via text between Ty and the UC during this time. The UC told Ty he would look into the problem the following day and hopefully resolve it with the UC's credit card company. During this same conversation, Ty explained in further detail how to finish the suppressors, how to drill the final holes using provided guides to make the suppressors fully functional. At no time during this conversation did Ty explain the process of how to properly register the completed suppressors. No mention was made of ATF, federal regulations, or additional resources to educate the UC on legality of possessing and or manufacturing suppressors.

24.     On June 23, 2016, the UC was able to resolve issues with his credit card and ordered the two suspected suppressors: Darkside Defense, complete assembly w/ flash hider 1/2x28 w/ .25 drill guide for a total of $525. Ty had previously told the UC he would sell the first suspected suppressor for $275 and the second for $250 for a total of $525. The UC contacted Ty via cell phone text and confirmed the order and shipping.

25.     On June 24, 2016, the UC checked his undercover post office box and located a package from Darkside Defense. The UC gave the package to SA Olson. The package was from www.darksidedefense.com, Dark Side Defense, 1860 E 3025 N, Logan, UT 84341. SA Olson opened the package, which contained two boxes marked "Darkside Defense." The boxes contained a flash hider, silencer tube, unfinished baffles, and drill guides. The baffles and endcap were not finished. SA Olson sent the silencers to FTB for determination.

26.     In September 2016, FTB determined that the two boxes containing the combination of parts from Darkside Defense were, in fact, silencers under 18 U.S.C. § 921(a)(24), 18 U.S.C. § 921(a)(3)(C), and 26 U.S.C. § 5845(a)(7).

27.     In October 2016, SA Olson emailed TYNDALL in a UC capacity via the contact@darksidedefense.com email to arrange for an in-person purchase of four silencers.

28.     On October 26, 2016, SA Olson met with TYNDALL in a parking lot in Roy, Utah. The interaction was audio/video recorded. TYNDALL introduced himself as "Ty." SA Olson recognized TYNDALL from his Utah driver's license photo. TYNDALL was driving a black Jeep Cherokee. TYNDALL showed the four silencers to SA Olson and explained how to finish them by drilling the end cap and baffles. TYNDALL stated that he was testing new designs but they did not reduce the noise like the ones he was selling to SA Olson. TYNDALL stated that he has sold approximately 800 of the silencers. TYNDALL stated that he has been selling the silencers at gun shows.

29.     SA Olson asked TYNDALL about registering the silencers. TYNDALL stated that the silencers do not need to be stamped as long as they don't leave the state of Utah. TYNDALL stated that Utah State Bill 11, Utah Firearms Protection Act, exempts them from markings.

30.     TYNDALL stated that his trunk is full of the devices. TYNDALL stated that he has the silencers resurfaced in Hooper, UT. TYDALL stated that he gets them anodized and Teflon coated in Logan, UT. TYNDALL stated that the silencers could be

subject to federal laws but commented, "When was the last time you saw an ATF guy?" SA Olson paid TYNDALL $1,100 and finished the transaction.

31.     On January 3, 2017, I emailed TYNDALL at contact@darksidedefense.com and asked if he would be attending the Rocky Mountain Gun Show on January 7-8, 2017.

32.     TYNDALL responded on January 3, 2017, that he would have a "rep" there named "Rick" from RIP Tactical. I observed that TYNDALL sent the email from his iPhone from IP address 166.170.50.111, which resolves back to Cingular/AT&T.

33.     I spoke to an ATF Industry Operations Investigator Area Supervisor who informed me that Richard PAWELEC was the owner of RIP Tactical (FFL #98021077B01000), 512 N Main, Kanarraville, Utah.

34.     On January 17, 2017, ATF Task Force Officer ("TFO") David Black conducted an undercover purchase of a silencer at the Rocky Mountain Gun Show. TFO Black was accompanied by Special Agents Tyler Olson, myself, and TFO Mario Aguilera. The gun show was held at the South Town Exposition Center, 9575 South State Street in Sandy, Utah.

35.     At the gun show, TFO Black made contact with Richard PAWELEC from RIP Tactical, who was selling silencers from Darkside Defense, along with his own AR-15-style firearms. The undercover contact was witnessed by the agents and TFO Aguilera. TFO Black recorded the conversation.

36.     At the booth occupied by PAWELEC, TFO Black observed multiple AR-15-style rifles. TFO Black also observed black cardboard boxes with Darkside Defense

printed on them. One of these boxes was open, displaying the parts to a silencer. PAWELEC stated that he was a partner with the owner of Darkside Defense. PAWELEC stated that the Darkside Defense parts were manufactured on a CNC machine and the exterior was powder coated.

37.    PAWELEC showed TFO Black how to assemble the silencer and how to attach it to the AR-15-style rifle. PAWELEC stated that the silencer would reduce the noise by 60%. PAWELEC stated that he knows that they work because he has used it on a full-auto rifle and fired 150 rounds out of it. PAWELEC also told TFO Black how to use one of the silencers on a .22 caliber rifle.

38.    PAWELEC indicated the Darkside Defense kit includes two guides, two wrenches, four baffles, one spacer, two end caps, a tube, flash suppresser and one package of anti-seize lubricant. PAWELEC indicated that the guides included in the kit are for a ¼" drill bit to drill the baffles and one of the end caps. PAWELEC stated that he has drilled these in his house.

39.    TFO Black ultimately purchased the silencer for $375 plus $5 for taxes.

40.    I asked SA Olson to check the NFRTR in regards to TYNDALL and his business, Darkside Defense. I then spoke with SA Olson who told me that neither TYNDALL, nor the company Darkside Defense has any registered silencers that we have identified as being in the NFRTR. SA Olson also checked to see if TYNDALL was an FFL and learned he had no record in the ATF licensing system.

**Additional Analysis of WWW.DARKSIDEDEFENSE.COM**

41.     On November 29, 2016, law enforcement obtained a pen register for the website www.darksidedefense.com. I served this order on Amazon Web Services as this is the registered owner of the IP address of the Subject Domain names.

42.     On December 7, 2016, I spoke with representatives from Amazon who stated they were leasing the IP address to another company, who was renting this space from Amazon's servers.

43.     Through open source domain records, I learned the Subject Domain names were being registered through Network Solutions, LLC, who is headquartered in Hernon, *HERNDON* Virginia.

44.     On February 8, 2017, I spoke to a representative of Network Solutions, LLC, who told me although the domain is registered to them, Wix.com is the company who can redirect the website and modify registrar information.

## **SUMMARY**

45.     Based upon the relevant facts included throughout this affidavit, I respectfully assert that TYNDALL and others, by and through the company Darkside Defense and the Subject Domain names, manufactured, sold, transferred, and shipped illegal and unregistered silencers, and parts kits to private citizens and undercover ATF agents through the website www.darksidedefense.com. This belief is based upon (i) the listing of the "solvent trap kits" on the website; (ii) the undercover ATF agents' purchases through the website of "solvent trap kits" that were identified as unregistered/illegal suppressor/silencers; (iii) the in person purchase of silencers by SA Olson from TYNDALL; and (iv) PAWELEC's statements on how the "solvent trap kit"

is actually a silencer. Therefore, it is respectfully requested that this Court order Network Solutions, LLC, to lock and restrain the Subject Domain names as outlined below in Attachment A.

## SEIZURE PROCEDURE

46.     The seizure procedure is outlined in Attachment A.

## CONCLUSION

47.     Based on the foregoing, I request that the Court issue the proposed seizure warrant.

48.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

49.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer

is not required for the service or execution of this warrant.

CLINTON KEHR, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives


Sworn and subscribed to before me on this ___ day of February, 2017


HONORABLE DUSTIN B. PEAD
UNITED STATES MAGISTRATE JUDGE

16

## ATTACHMENT A

### Property to Be Seized

I.     Seizure Procedure

A.     The seizure warrant will be presented in person or transmitted via facsimile or email to personnel of the domain name registry and web hosting company listed in section II who will be directed, for the domain name listed in section III ("Subject Domain Name") for which it serves as the top-level domain registry, to make any changes necessary to restrain and lock the domain name pending transfer of all rights, title, and interest in the Subject Domain Name to the United States upon completion of forfeiture proceedings.

B.     Upon seizure of the Subject Domain Name, the Subject Registry and web hosting company will be directed to point the Subject Domain Name to an IP address of the United States' choosing, at which time the United States will display a web page with the following notice:

> **"The website www.darksidedefense.com has been seized by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), in accordance with a seizure warrant obtained by the United States Attorney's Office for the District of Utah.**
>
> **It is a violation of federal law to manufacture, receive, transport, and/or deliver a silencer not registered in the National Firearms Registration and Transfer Record (26 USC §§ 5861(a),(d),(e),(f), and (j)).**
>
> **The possession of a silencer sold by Darkside Defense is a violation of federal law. If you are in possession of a silencer sold by Darkside Defense you should contact your nearest ATF office, or call 1-800-ATF-GUNS."**

C.     The Subject Registry and web hosting company are directed to take all steps necessary to lock the Subject Domain Name at the registry level to ensure that changes to the subject domain name cannot be made absent court order or, if forfeited to the United States, without prior consultation with the ATF.

D.     Upon seizure of the Subject Domain Name, any records, databases, tables, or documents that are used by the Subject Registry and web hosting company to identify the owner of the Subject Domain Name shall be modified to reflect the seizure of the Subject Domain Name. These changes relate to the following records, if they exist:

    1.     The "Technical Contact" and "Administrative Contact" fields will reflect the following information:

        a.     Name: Bureau of Alcohol, Tobacco, Firearms, and Explosives
        b.     Address: 99 New York Ave, NE, Washington, DC 20226
        c.     Country: USA
        d.     Telephone: 1-800-ATF-GUNS
        e.     Email: ATFTips@atf.gov
        f.     Fax: N/A

    2.     Any remaining fields will be changed so they do not reflect any individual or entity.

E.     The Subject Registry and web hosting company shall take any steps required to propagate the changes detailed in Section D to any applicable DNS servers.

II.    Subcase Registry

Network Solutions, LLC

13861 Sunrise Valley Drive, Suite 300

Herndon, VA 20171

Web Hosting Company

Wix.com

40 Namal Tel Aviv

Tel Aviv

Israel

III.   Subject Domain Names

WWW.DARKSIDEDEFENSE.COM

DARKSIDEDEFENSE.COM